In re Harvey Dale **PETTY,** Jr., Norma Elsie Petty, Debtors.

George N. **GROSS,** Appellant,

v.

Harvey Dale **PETTY,** Jr., Norma Elsie Petty, Harvey Dale Petty, Sr., and Betty Petty, Appellees.

BAP No. OR 88–1205–AsMoJ.

Bankruptcy No. 385–04413–P7.

Adv. No. 87–0206.

United States Bankruptcy Appellate Panel, Ninth Circuit.

Argued and Submitted Sept. 16, 1988.

Decided Nov. 18, 1988.

Jossi Davidson, Gracey & Davidson, Silverton, Or., for appellant.

James C. Lancaster, Lindsay, Hart, Neil & Weigle, Portland, Or., for appellees.

Before ASHLAND, MOOREMAN and JONES, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

Harvey Petty, Sr. and Betty Petty appeal the bankruptcy court's grant of summary judgment allowing the trustee to recover property transferred from the debtor to the Pettys as a preference under 11 U.S.C. § 547.

## FACTS

In 1976 the debtor Harvey Petty, Jr. entered into a land sale contract to purchase an undeveloped five acre parcel in Marion County, Oregon for $15,000. On March 31, 1982 the debtor sold the Marion County property to Beaman for $33,000. The contract provided that Beaman would put $4,000 down, make monthly payments of $250, and pay the balance in a single balloon payment in 1992.

On that same day, the debtor "assigned" his rights under the Beaman contract to his parents Harvey Petty, Sr. and Betty Petty (Pettys). At the time of the assignment Mr and Mrs Pettys agreed to pay the outstanding balance owed by Harvey Petty, Jr. on the property ($7,000) and agreed to forgive a debt of $28,000 that the Pettys had previously loaned to him. Beaman was notified of the assignment. Thereafter, the Pettys paid the outstanding balance owed on the property and received payment from Beaman until March 26, 1987, when Beaman defaulted and the Pettys accepted a quitclaim deed in lieu of pursuing other collection remedies.

The transaction between the debtor and the Pettys was memorialized by an informal unrecorded writing dated March 31, 1982. On October 24, 1985 approximately one week before the debtors filed their petition, a written assignment from the debtors to the Pettys was executed and recorded. Neither the assignment nor the property were listed in the debtors' Chapter 7 petition filed November 1, 1985.

On March 3, 1986 the trustee filed a no asset report. Shortly afterward, on March 14, 1986, an attorney for Household Finance Corp. (one of the unsecured creditors) advised the trustee of the debtors' potential interest in the property. Upon request, the debtors' attorney delivered a copy of the October 1985 assignment to the trustee on March 20, 1986. On April 25, 1986 the trustee requested additional information regarding the transaction. The debtors' attorney responded on May 5, 1986 with a letter describing the original purchase and subsequent sale of the property as well as the assignment of the contract to the Pettys.

The bankruptcy court clerk's office administratively closed the bankruptcy file on August 22, 1986 pursuant to a court order filed April 22, 1986. The parties were not notified that the case had been closed. No further action was taken until October 16, 1986 when the attorney for Household Finance Corp. requested additional documents relating to the disposition of the property, and on December 2, 1986 requested that the debtor be made available for examination under Rule 2004. Household Finance Corp.'s attorney was notified that the case was closed; however, the debtor was examined on December 16, 1986.

The trustee moved to reopen the case on January 5, 1987. An *ex parte* order reopening the case was issued on January 20, 1987. The present adversary proceeding was initiated on April 20, 1987. The trustee argues that the transfer of the property to the Pettys was preferential and, therefore, avoidable under § 547. The Pettys claim the adversary proceeding to avoid the transfer is barred by the statute of limitations contained in § 546(a). Alternatively, the Pettys assert that the trustee should be barred from bringing the avoidance action by the doctrine of laches.

The Pettys contend that the trustee did not diligently pursue the preference claim because he had knowledge of the underlying transaction in April of 1986, four months before the case was closed, and did not file a complaint until April 1987. Additionally, the Pettys contend that during the time between the closing of the case in August 1986 and the filing of the complaint

in April 1987, Mr. Petty Sr., in specific reliance upon their ownership of the property, chose to retire accepting reduced benefits since he was not yet age sixty-five.

In granting summary judgment for the trustee, the bankruptcy court held that the transfer of the property occurred in October 1985, because the Pettys' interest was not perfected until it was recorded. 11 U.S.C. § 547(e)(1)(A) and (e)(2)(A). The court also found that the transfer was for the benefit of a creditor on account of an antecedent debt, made within 90 days of filing, which allowed the Pettys to receive more than their share under a liquidation, therefore, the transfer was a preference.

Furthermore, the court found that the avoidance action was not barred by § 546(a) because although the trustee knew some of the operative facts prior to the closing of the case, the assignment was not disclosed, either through intent or mistake, in the bankruptcy petition. The court held that once the trustee received knowledge of the assignments he diligently pursued the matter, and in any event should not be penalized for the delay because it resulted in part from the debtor's concealment of information. The court reasoned that the limitations period specified in § 546(a) must be read in conjunction with the court's power to reopen cases under § 350.

Likewise, the court found that the action was not barred by laches because once the facts were brought to the trustee's attention he was diligent in pursuing the matter. The court also held that the Pettys did not rely on the case being closed in making their retirement decision because that decision was made prior to the case being closed.

## ISSUES

1. Was the adversary proceeding barred by the statute of limitations contained in § 546(a)?

2. Was the adversary proceeding barred by the doctrine of laches?

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). This court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986), Fed.R.Civ.P. 56(c).

## DISCUSSION

In relevant part § 546(a) states:

An action or proceeding under section ... 547 ... of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702 ... or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

If the trustee's complaint to avoid a preferential transfer is not timely filed in accordance with § 546(a) then the bankruptcy court has no jurisdiction to hear the complaint. *In re Oro Import Co.,* 52 B.R. 357, 359 (Bankr.S.D.Fla.1985), *rev'd on other grounds,* 69 B.R. 6 (S.D.Fla.1986). Thus, a trustee's right to avoid a transfer and recover from the transferee ends at the time the case is closed. *Peterson v. Thorp Credit and Thrift Co.,* 26 B.R. 942, 944 (Bankr.Minn.1983). A literal application of the statute in this case requires a bar to the trustee's avoidance action under § 546(a)(2). The action was commenced in April 1987, eight months after the case was administratively closed, even though it was brought within the two year limitation period contained in § 546(a)(1).

Section 350 provides:

(a) After an estate is *fully administered* and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to *administer assets,* to accord relief to the debtor, or for other cause.

11 U.S.C. § 350(a) & (b) (emphasis added).

 Where, as here, the court finds that there is an asset of the estate which may be administered, the possible return of

money to the estate justifies the reopening of the case. *In re Ward,* 60 B.R. 660, 663 (Bankr.W.D.La.1986). It follows that since the debtors' potential interest in the subject real estate was not disclosed in the bankruptcy petition the case was never fully administered within the meaning of § 350(a), and therefore not properly closed under that section.

■ This reasoning is analogous to that of cases analyzing abandonment of property. Under § 554 abandonment presupposes knowledge of the existence of the property to be abandoned. Generally, there can be no abandonment, by mere operation of law, of property that was not listed in the debtors' schedules or otherwise disclosed to creditors. *See* 4 L. King, *Collier on Bankruptcy,* ¶ 554.03 (15th Ed.1988). Section 554(d) provides:

> Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554(d).

Once it has been established that the case was not properly closed and may be reopened to administer the assets of the debtor's estate it would be anomalous to bar the collection of the very assets sought to be recovered because the case was closed. The primary reason for reopening the case would be prohibited. Accordingly, the word "closed" in § 546(a)(2) must be read to mean properly and finally closed.

Cases analyzing the statute of limitations contained in § 11d of the Bankruptcy Act of 1898, as amended, and the pre–1984 amendment version of § 546(a)(2) have similarly construed the word closed. *Bilafsky v. Abraham,* 183 Mass. 401, 67 N.E. 318 (1903); *In re Ward,* 60 B.R. 660, 663 (Bankr.W.D.La.1986); *In re Stanke,* 41 B.R. 379, 381 (Bankr.W.D.Mo.1984); *In re Alt,* 39 B.R. 902, 903–04 (Bankr.W.D.Wis. 1984); *see also* 4 L. King, *Collier on Bankruptcy,* ¶ 546.02 (15th Ed.1988). In *Bilafsky* the court stated:

> It seems to us that the word "closed" in this provision [§ 11d of the Bankruptcy Act] means properly and finally closed, and if upon proceedings in the court of bankruptcy, it appears that order should be issued reopening the estate for purpose of having it fully administered, it should be held, after the reopening, that the estate is opened for the purpose of bringing suits, even though more than two years have elapsed since the entry of the original erroneous order. In this way, we think, affect will be given to the purpose of the Congress to provide for a full and proper administration of the estate's of bankrupts.

*Bilafsky v. Abraham,* 67 N.E. at 319.

■ Applying the reasoning in *Bilafsky,* a trustee should not be barred from bringing an avoidance action because the estate was closed under the mistaken assumption that it had been fully administered. It is important to note that if the two year limitation provided in § 546(a)(1) had run, the trustee's action would have been barred since that section applies even if the case has never been closed. As the debtor's petition was filed November 1, 1985 and the adversary proceeding to avoid the transfer was filed 16 months later on April 20, 1987 the action is not barred by § 546(a)(1) or (2).

■ The Pettys next contend that the trustee's avoidance action should be barred by laches. The threshold question is whether the equitable doctrine of laches is available as a defense to the trustee's avoidance action. In *Royal Air Properties v. Smith,* the Ninth Circuit stated:

> Where Congress has provided a specific and relatively short statute of limitations, it can be inferred that the federally created limitation is not to be cut short.

312 F.2d 210, 214 (9th Cir.1962).

Courts addressing the issue have generally held that laches will not operate as a bar to an otherwise timely avoidance claim because § 546(a) provides a specific statutory time limitation for bringing the action. *In re Korvettes, Inc.,* 67 B.R. 730, 734 (S.D.N.Y.1986); *In re Jennings, Inc.,* 46 B.R. 167, 172 (Bankr.E.D.Pa.1985); *In re Mandrell,* 39 B.R. 455, 459 (Bankr.M.D. Tenn.1984); *In re Silver Mill Frozen Foods, Inc.,* 23 B.R. 179, 181 (W.D.Mich. 1982). As discussed above, this avoidance

action was brought within the limitations period imposed by § 546(a). Therefore, the action is timely and not barred by laches as a matter of law.

Assuming for purposes of argument, that laches is available as a defense, it does not apply in this case. To establish a defense of laches, a party must show there was inexcusable delay in the assertion of a known right and the party asserting laches has been prejudiced. *Barona Group of the Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc.*, 824 F.2d 710, 723 (9th Cir.1987).

The bankruptcy court found that Mr Petty's decision to retire was made prior to the case being closed; therefore, the Pettys did not rely on the case being closed without the transfer being challenged in planning their retirement. As a result the court found that the Pettys had not been prejudiced. The court relied on the following testimony provided in Mrs. Petty's affidavit:

> Had we known last summer that the trustee wanted to take this property away from us we would have evaluated differently our decision to accept a deed to the property, our decision not to try to protect our position regarding residential property and our decision to retire.

Even if the court properly construed Mrs Petty's statement to mean that the decision to retire was made before the closing of the case, the court overlooked the fact that Mr. Petty testified that he made the decision to retire "around the first of the year, 1987," some four or five months after the case was administratively closed. Viewing the evidence in the light most favorable to the Pettys, it was error to conclude that the decision to retire was made prior to the closing of the case.

Nevertheless, in addition to prejudice the Pettys must show that there was an inexcusable delay by the trustee in asserting a known right. The facts are undisputed with regard to both the timing of the filings and the notice given to the trustee. It is clear that the debtors, in order to attend fairly to their responsibilities as debtors, had a duty to account for assets, complete

schedules in good faith, and comply with the trustee's requests for documents. *See In Re Mathis Ins. Agency, Inc.*, 50 B.R. 482, 487 (Bankr.E.D.Ark.1985). The assignment from the debtors to the Pettys was not disclosed in the debtors' bankruptcy petition. The trustee first became aware of the assignment in March 1986, five months before the case was closed, and had subsequent correspondence regarding the transaction with debtor's attorney in April and May 1986. The case was closed in August 1986, and not reopened until January 1987. Part of the delay was due to the fact that the debtors did not timely disclose the operative facts surrounding the assignment to the Pettys, and part of the delay appears to be due to simple inaction by the trustee. While the trustee perhaps could have handled this matter more efficiently, his conduct has not been so egregious as to constitute a bar to the avoidance action.

## CONCLUSION

The adversary proceeding is not barred by the statute of limitations contained in § 546(a) or by the equitable doctrine of laches. The judgment of the bankruptcy court is therefore affirmed.